Merrimack
No. 2005-649

THE STATE OF NEW HAMPSHIRE

v.

JAMES J. HALL

Argued: June 8, 2006
Opinion Issued: September 26, 2006

*Kelly A. Ayotte,* attorney general (*Jeffery A. Strelzin,* senior assistant attorney general, on the brief and orally), for the State.

*Kacavas & Ramsdell, P.L.L.C.,* of Manchester (*John P. Kacavas* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, James J. Hall, appeals a decision of the Superior Court (*McGuire,* J.) denying his motion for appointment of new counsel. We vacate and remand.

The relevant facts are not in dispute. The defendant was convicted of second degree murder in 2000. That conviction was reversed on appeal. *See State v. Hall,* 148 N.H. 394, 401 (2002). The defendant was retried and again convicted of second degree murder. We affirmed that conviction. *See State v. Hall,* 152 N.H. 374, 379 (2005).

Subsequently, the defendant's trial counsel filed a motion to appoint new counsel for the purpose of assisting the defendant with a motion for new trial. In the motion, she alleged that while awaiting this court's decision on the defendant's second appeal, the defendant had informed her of federal case law which supported an argument that certain evidence at his retrial should have been excluded on double jeopardy grounds. The defendant's trial counsel informed him that she would raise this issue at a third trial if the defendant's conviction were again reversed. She argued in the motion to appoint new counsel that she had rendered ineffective assistance of counsel by not raising the evidentiary issue during the defendant's second trial. The State objected to the motion, and it was denied without a hearing.

The defendant appeals, arguing that: (1) an indigent defendant seeking a new trial based upon a non-frivolous claim of ineffective assistance of counsel has a right to counsel under the Due Process Clause of Part I, Article 15 of the New Hampshire Constitution; and (2) even if the defendant had no absolute right to counsel, the trial court's denial of his motion under these circumstances was an unsustainable exercise of discretion.

*I. Right to Counsel*

The defendant argues that Part I, Article 15 of the State Constitution guarantees him the right to the assistance of counsel on his motion for a new trial. We disagree.

Whether a defendant has a right to be represented by counsel on a motion for new trial is an issue of first impression for this court. Because the defendant relies solely upon the State Constitution, we base our decision upon it alone, using federal cases only to aid in our analysis. *See Gonya v. Comm'r, N.H. Ins. Dept.*, 153 N.H. 521, 524 (2006). Because this issue poses a question of constitutional law, we review it *de novo. See In the Matter of Berg & Berg*, 152 N.H. 658, 661 (2005).

■ In deciding whether the State Constitution mandates the appointment of counsel in a given proceeding, we employ the three-prong test articulated by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *State v. Cook*, 125 N.H. 452, 455 (1984); *see, e.g., In re Brittany S.*, 147 N.H. 489, 491 (2002) (considering State constitutional right to counsel in proceeding to terminate guardianship); *Cook*, 125 N.H. at 459 (considering State constitutional right to counsel in habitual offender proceedings). Thus, we consider: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, considering the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Brittany S.*, 147 N.H. at 491; *see Cook*, 125 N.H. at 455-56.

We begin by examining the private interest in this case. The defendant argues that he maintains a liberty interest in the reliability of his conviction, the fundamental fairness of the trial resulting in that conviction, and the liberty of which he has been deprived as a consequence. The State argues that the defendant has no liberty interest since he has already been convicted and has had that conviction affirmed on appeal.

■ Post-conviction relief, such as a motion for a new trial based upon ineffective assistance of counsel, is "civil in nature." *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). It is initiated by the defendant, who has exhausted his avenues to secure direct relief, *see id.*, and, unlike a criminal trial, will not result in increased penalties. Therefore, the due process considerations that require appointment of counsel to criminal defendants are not present in actions for post-conviction relief.

We note that a conviction does not, on its own, terminate a defendant's constitutional rights. *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984). However, we have previously recognized the "crucial distinction between being deprived of a liberty one has ... and being denied a conditional liberty interest one desires" and that incarcerated and non-incarcerated defendants do not share "an equal liberty interest." *State v. Gibbons*, 135 N.H. 320, 321 (1992) (quotation omitted; ellipsis in original). Moreover, the possible loss of a liberty interest does not automatically guarantee the right to counsel. *Cf. Duval v. Duval*, 114 N.H. 422, 426 (1974) ("[federal] due process does not require the right to counsel in every instance where the possibility of incarceration exists").

The liberty interest at issue in this case is analogous to that at issue in *Brittany S.*, 147 N.H. at 491-92. There, a mother sought appointed counsel to assist in terminating a guardianship order placing her daughter in the custody of a third party. *Id.* at 490. While we recognized the "fundamental nature of a parent's liberty interest," we found that the mother's interest in the termination hearing was "less substantial" than that at issue in the initial guardianship proceeding. *Id.* at 491-92. We reasoned that "[t]he private interest associated with the possible return of parental rights is not a mirror image of the private interest involved with the initial loss of those rights" because the mother's rights had already been "curtailed during the initial guardianship proceeding." *Id.* at 491-92. Moreover, we found that the termination proceeding "impose[d] no increased risk to further deprivation of" those rights, and therefore the private interest at stake was less than at the initial proceeding. *Id.*

Similarly, the defendant here possessed a fundamental liberty interest prior to his conviction. Like the liberty interest of the mother in *Brittany S.*, the defendant's liberty interest was curtailed during previous proceedings; namely, his conviction and appeal. A motion for a new trial, like an attack on an award of guardianship, is an attempt by the defendant to have certain rights returned to him. His interest in that proceeding is not the "mirror image" of his liberty interest at his trial or on appeal. Thus, while a defendant retains some liberty interest post-conviction, it is less substantial than that of a defendant who has not been convicted.

We next examine the risk of an erroneous deprivation of a defendant's liberty interest through the procedures used. The defendant argues that not having the assistance of counsel creates a high risk that he will be erroneously deprived of his liberty interest because he has the burden of proof on an ineffective assistance of counsel claim and the issues are of a complex constitutional nature. While a defendant may benefit from the assistance of counsel on a collateral attack, certain factors lessen the need for the assistance of counsel.

In this case, the motion for new trial was decided by a judge, not a jury. We have recognized that where there is no jury trial, there is less need for the assistance of an attorney in organizing arguments. *Cook*, 125 N.H. at 456. Additionally, in this case, there are transcripts, motions, and briefs from the trial and direct appeal that the defendant can use in preparing a motion for a new trial. *See Ross v. Moffitt*, 417 U.S. 600, 615 (1974) (finding access to the trial record, appellate briefs and opinions sufficient for *pro se* litigant to gain meaningful access on discretionary appellate review). Such documents are also available to the judge to provide a reliable factual basis for rendering a decision. *See id.* Furthermore, the risk that the defendant may be erroneously deprived of a new trial is lessened here because the reliability of the defendant's conviction has been tested through both trial and appellate review. Thus, we conclude that a lack of assistance of counsel on a motion for a new trial does not create a substantial risk that the defendant will be erroneously deprived of a liberty interest.

Finally, we examine the government's interest, including the function involved and the fiscal and administrative burdens that the provision of court-appointed counsel would entail. *See Brittany S.*, 147 N.H. at 493. While we recognize that appointment of counsel would benefit a defendant collaterally attacking a conviction and would likely assist courts by narrowing and organizing the issues, the automatic appointment of counsel would also impose a significant fiscal and administrative burden on the State.

On the record before us, we have no facts regarding the number of collateral attacks filed in New Hampshire. However, our experience is that such filings are not uncommon and frequently, a single prisoner will attempt to collaterally attack a conviction several times. Certainly, the number of these petitions is not insignificant. Thus, requiring the State to appoint counsel in all such proceedings would impose a significant financial and administrative burden on the State.

██ In balancing the three factors, we conclude that given the defendant's less than substantial liberty interest, the low risk of an erroneous deprivation of that interest, and the government's interest in avoiding a fiscal and administrative burden, due process does not require counsel to be appointed to assist a defendant making a post-conviction motion for a new trial.

This conclusion is consistent with that of the United States Supreme Court in *Pennsylvania v. Finley*. There the defendant sought appointed counsel to assist her in seeking post-conviction relief in state court on her second degree murder conviction. *Finley*, 481 U.S. at 553. The Court rejected her argument that the State was obligated under the Federal

Constitution to provide counsel, holding that "the right to appointed counsel extends to the first appeal of right, and no further." *Id.* at 555. The Court reasoned that post-conviction relief "is not part of the criminal proceeding itself" and "is in fact considered to be civil in nature." *Id.* at 557. The Court determined that post-conviction relief "is even further removed from the criminal trial than is discretionary direct review." *Id.* at 556-57. The Court concluded that "States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." *Id.* at 557 (citation omitted).

## II. *Unsustainable Exercise of Discretion*

The defendant's fallback argument is that even if no absolute right to counsel exists, trial courts have discretion to appoint counsel on a motion for new trial, and that by not doing so in this case, the trial court committed an unsustainable exercise of discretion. We agree that a trial court has discretion to appoint counsel.

In *Duval v. Duval*, 114 N.H. at 426, we held that the State Constitution does not guarantee an automatic right to counsel in civil contempt proceedings. We recognized, however, that "the trial court may in its discretion appoint counsel" in "complicated" cases. *Id.* at 427; *see Cook*, 125 N.H. at 400. Complicating factors include the capability of a defendant to speak for himself, the character of the proceeding, the complexity of the issues, and circumstances which show that the defendant would be treated unfairly if the assistance of counsel were not provided. *See Duval*, 114 N.H. at 426-27.

While *Duval* involved a civil contempt proceeding, the reasoning applies to a motion for a new trial, as both types of proceedings involve a potential or ongoing restriction of one's liberty. Thus, the trial court may, in its discretion, appoint counsel to assist the defendant in making a motion for a new trial.

Because the trial court denied the defendant's motion to appoint counsel without a hearing or an explanation, we are unable to determine whether it did so because it concluded that the defendant had no constitutional right to counsel, or if the court, in its discretion, concluded that the *Duval* factors did not require the appointment of counsel. Thus, we remand the case for application of the discretionary factors announced in this opinion.

*Vacated and remanded.*

DALIANIS, GALWAY and HICKS, JJ., concurred.