Merrimack
Rockingham
Nos. 2006-257
    2006-773

THE STATE OF NEW HAMPSHIRE

v.

CARLOS LOPEZ

GUILLERMO RIVERA

v.

WARDEN, NEW HAMPSHIRE STATE PRISON

Argued: June 7, 2007
Opinion Issued: September 21, 2007

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the memorandum of law and orally), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the briefs and orally, for defendant Carlos Lopez and petitioner Guillermo Rivera.

DUGGAN, J. The defendant, Carlos Lopez, appeals the Superior Court's (*Coffey*, J.) denial of his post-conviction motion for a new trial, which sought to withdraw his guilty pleas to two drug-related charges on the grounds that they were not knowingly or voluntarily made. The petitioner, Guillermo Rivera, appeals the Superior Court's (*Nadeau*, J.) denial of a post-conviction claim that he received ineffective assistance of counsel when he pled guilty to sexual assault because his then-counsel had a conflict of interest. We shall refer to Lopez and Rivera hereafter as the defendants. Both defendants applied for court-appointed counsel on appeal. We accepted both appeals and appointed the Appellate Defender for the limited purpose of addressing the question whether, in light of the Supreme Court's holding in *Halbert v. Michigan*, 545 U.S. 605 (2005), an indigent defendant who seeks to appeal the denial of a motion to withdraw a guilty plea is entitled to court-appointed counsel. The State and the defendants agree that if an appeal from a denial of a motion to withdraw a plea is part of the direct appeal from the conviction and sentence, then under the Federal Constitution, a defendant is entitled to court-appointed counsel. They also agree that *Halbert* does not afford a defendant a federal constitutional right to counsel when the defendant appeals a collateral challenge to a guilty plea. We agree with those principles.

The defendants, however, urge us to find a right to court-appointed counsel on appeal of a collateral challenge to a guilty plea under Part I, Article 15 of the New Hampshire Constitution. We conclude that there is no such entitlement, but hold that under certain circumstances, we may appoint counsel in such cases.

*I. Right to Counsel Under the Federal Constitution*

In *Halbert v. Michigan*, the United States Supreme Court held that the Fourteenth Amendment to the United States Constitution requires that an indigent defendant be provided with court-appointed counsel when he files a direct appeal from a plea-based conviction to a first-tier court that conducts discretionary, but merits-based, review. *Halbert*, 545 U.S. at 623-24. We begin our discussion of *Halbert*'s application in New Hampshire by reviewing the antecedents to *Halbert* that articulate an indigent criminal defendant's right under the Federal Constitution to court-appointed appellate counsel.

In *Douglas v. California*, 372 U.S. 353, 356-57 (1963), the United States Supreme Court held that an appellate court undertaking review of first appeals-as-of-right from criminal convictions is required to provide court-appointed counsel to indigent defendants. The Court reasoned that for most lay people, an appeal without the benefit of organization and argument by counsel is a "meaningless ritual." *Id.* at 358. It concluded that

"where the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel . . . an unconstitutional line has been drawn between rich and poor." *Id.* at 357.

In *Ross v. Moffitt*, the Court held that the right articulated in *Douglas* does not extend to discretionary appeals when the discretion to review is not based upon the merits of the appeal. *Ross v. Moffitt*, 417 U.S. 600, 610-11 (1974). There, the North Carolina Supreme Court provided discretionary review of convictions after mandatory review by an intermediate appellate court, accepting cases based upon their public importance and other criteria unrelated to the merits of the appeal. *Id.* at 612-14. Holding that the Federal Constitution does not require the appointment of counsel for an indigent defendant seeking review in the North Carolina Supreme Court, the United States Supreme Court noted that a state need not provide any appeal at all, but when an appeal is provided, the state does not necessarily act unfairly by refusing to provide counsel to indigent defendants "at every stage of the way." *Id.* at 611. It was sufficient that the defendant's claims were "once . . . presented by a lawyer and passed upon by an appellate court." *Id.* at 614 (quotation omitted). In addition to having had the benefit of counsel in his appeal to the intermediate appellate court, the defendant had the record, arguments and opinion from that appeal, and these materials, concluded the Court, "supplemented by whatever submission respondent may make *pro se,* would appear to provide the Supreme Court of North Carolina with an adequate basis for its decision to grant or deny review." *Id.* at 615. The Court emphasized that this conclusion was fortified by its "understanding of the function served by discretionary review in the North Carolina Supreme Court. The critical issue in that court, as we perceive it, is not whether there has been a correct adjudication of guilt in every individual case, but rather whether the subject matter of the appeal has significant public interest" or the case involves significant legal principles or a conflict with precedent. *Id.* (quotations and citation omitted).

In *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), the Court held that there is no federal constitutional right to court-appointed counsel in an appeal of a collateral attack on a criminal conviction. The Court wrote, "Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further." *Id.* "We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori,* he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process." *Id.*

In *Halbert,* the question was whether an indigent defendant is entitled to court-appointed counsel when he files a first, direct appeal from a plea-

based conviction to a court that conducts discretionary but merits-based review. *Halbert*, 545 U.S. at 616-17. Halbert was convicted on a plea for two counts of criminal sexual conduct. *Id.* at 614. At sentencing, the trial court denied defense counsel's request that the sentences run concurrently. *Id.* at 615. The next day, Halbert, *pro se*, moved unsuccessfully to withdraw his plea, and was instructed by the trial court to appeal to the Michigan Court of Appeals, which, as the State's intermediate appellate court, provided discretionary review. *Id.* at 612, 615. Halbert's requests that the trial court appoint counsel to help him prepare an application for leave to appeal, which were accompanied by information that Halbert had learning disabilities and was "mentally impaired," were denied by the trial court, which ruled that he did "not have a constitutional ... right to appointment of appellate counsel to pursue a discretionary appeal." *Id.* at 615-16 (quotation omitted). Again acting *pro se*, Halbert filed an application for leave to appeal, claiming sentencing error and ineffective assistance of counsel, and seeking remand for appointment of appellate counsel and resentencing. *Id.* at 516. In a standard form order, the court of appeals denied Halbert's application "'for lack of merit in the grounds presented.'" *Id.* The Michigan Supreme Court denied Halbert's application for leave to appeal and Halbert then appealed to the United States Supreme Court. *Id.*

The question before the United States Supreme Court was whether Halbert's asserted right to court-appointed counsel was more properly aligned with *Douglas v. California* or *Ross v. Moffitt. Halbert*, 545 U.S. at 609-10, 616-17. The Court decided that *Douglas* was controlling primarily for two reasons.

First, unlike the North Carolina Supreme Court and the Michigan Supreme Court, which sit to decide "matters of larger public import," *Halbert*, 545 U.S. at 618, the Michigan Court of Appeals necessarily looked to the merits of an applicant's claims when deciding whether to grant leave for discretionary appeals. *Id.* at 617-19. Thus, although Halbert's appeal to the Michigan Court of Appeals was discretionary, the error-correcting function of that intermediate appellate court more closely resembled the first-tier review as of right in *Douglas. Id.* The distinction between types of review, for the purposes of applying *Douglas* and *Ross*, hinges not upon whether the review is mandatory or discretionary, but rather upon whether or not it is merits-based. *Id.*

Second, "indigent defendants pursuing first-tier review in the Court of Appeals are generally ill equipped to represent themselves." *Id.* at 617. The Court noted that whether it is "formally categorized as the decision of an appeal or the disposal of a leave application, the Court of Appeals' ruling on a plea-convicted defendant's claims provides the first, and likely

the only, direct review the defendant's conviction and sentence will receive." *Id.* at 619. Appeals from guilty pleas, like appeals after trial, can involve complex or technical issues. *Id.* at 621-22. Many indigent defendants are "particularly handicapped as self-representatives," *id.* at 620, due to factors such as incarceration, lack of formal education, illiteracy, learning disabilities and mental impairments, *id.* at 621. Accordingly, Halbert was entitled to counsel when seeking first-tier review of his conviction and sentence in the Michigan Court of Appeals, even though the appeal was discretionary rather than mandatory. *Id.* at 616-17.

■ Applying these principles to appeals in New Hampshire, we note first that the federal constitutional right established in *Halbert* has not been questioned in this State. The New Hampshire Supreme Court is the only appellate court in this State, and we provide mandatory review of every direct appeal from a criminal conviction. SUP. CT. R. 3. The review is merits-based. *Id.* Based upon the language of Supreme Court Rule 3, such review applies whether the appeal follows a conviction arising out of a trial, or from a guilty or *nolo contendere* plea. *See* SUP. CT. R. 3 ("Mandatory appeal" includes "an appeal from a final decision on the merits issued by a superior court [or] district court . . . ."). The issues that might be raised by a person appealing directly from a guilty plea include, *inter alia*, whether an on-the-record colloquy demonstrates that the plea was knowing, voluntary and intelligent, *State v. Arsenault*, 153 N.H. 413, 415 (2006); whether the defendant should have been allowed to retract a plea prior to sentencing, *State v. Sarette*, 134 N.H. 133, 134 (1991); and the legality of the defendant's sentence, *State v. Armstrong*, 151 N.H. 686 (2005). If these or other issues are raised in a motion for new trial filed after the acceptance of a plea but prior to sentencing, or a motion filed within ten days of sentencing, then a defendant filing a direct appeal of an adverse ruling upon the motion is, under *Halbert* and its predecessors, entitled to court-appointed counsel. *See* SUP. CT. R. 7(1)(C) (deadline for filing appeal from criminal conviction is thirty days after sentencing or thirty days after clerk's notice of disposition of post-trial motion filed within ten days after sentencing).

■ The contrary result obtains when a defendant collaterally challenges a guilty plea after the period for direct appeal has expired, and then seeks discretionary review in this court under Supreme Court Rules 3 and 7(1)(B). The United States Supreme Court has never held that the right to counsel on appeal extends beyond first-tier, direct review of a conviction. In concluding that a plea-convicted defendant has a right to counsel when directly appealing his conviction to a first-tier court of error correction, *Halbert* did not question the authority of the *Finley* decision establishing

that there is no right to counsel in an appeal of a collateral attack on a criminal conviction. We decline to read such a requirement into the United States Constitution when the United States Supreme Court has not done so itself.

There are factors present in New Hampshire which, at first blush, suggest that the result might be otherwise. First, our Rule 7 notice of discretionary appeal form asks, among other things, whether the decision that is being appealed conflicts with the law or is "erroneous, illegal, unreasonable or was an unsustainable exercise of discretion." SUP. CT. R. Forms. In this sense, our error-correcting function even in discretionary appeals is equivalent to the first-tier review performed by Michigan's intermediate court of appeals. Second, we have no reason to believe that indigent defendants pursuing review in this court are better equipped to represent themselves than the defendants described in the *Halbert* opinion. However, there is a critical difference between a defendant who collaterally challenges a plea-based conviction in New Hampshire and the defendant in *Halbert*. Unlike the review at issue in *Halbert*, discretionary review of a collateral challenge to a criminal conviction is not the only review of the defendant's conviction and sentence in New Hampshire, because, as discussed above, the defendant has an opportunity for mandatory direct review under Rule 7(1)(A). Put another way, a defendant making Halbert's claim in New Hampshire would have an opportunity for first-tier review through mandatory appeal to this Court. We believe this distinction is critical, and supports our conclusion that the federal right to counsel articulated in *Halbert* does not extend to an appeal from the denial of a collateral challenge to a plea-based conviction.

## II. Right to Counsel Under the State Constitution

*Halbert* requires the appointment of counsel for an indigent defendant appealing a challenge to a plea-based conviction through a direct appeal-as-of-right to this court. Since we are bound by *Halbert*'s narrow holding, we need not perform a separate analysis under Part I, Article 15 of the New Hampshire Constitution and we express no opinion whether there exists a state constitutional right to counsel under these circumstances. What remains is the question whether Part I, Article 15 of the New Hampshire Constitution provides a right not afforded by the United States Constitution; namely, the right to counsel when appealing a collateral attack on a plea-based conviction.

In *State v. Hall*, 154 N.H. 180, 184 (2006), we held that a defendant has no right to counsel when collaterally challenging his conviction based upon a claim of ineffective assistance of counsel. We explained that a collateral attack is civil in nature; accordingly, "the due process considerations that

require appointment of counsel to criminal defendants are not present." *Id.* at 182. Instead, we employed the three-prong test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), balancing: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, considering the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Hall*, 154 N.H. at 182. While *Hall* did not address whether such a defendant would have a right to counsel on appeal from the denial of his motion for new trial, that possibility is foreclosed by our decision in *State v. Westover*, 140 N.H. 375, 378 (1995), where we held that a defendant who does not have a right to appointed counsel at trial does not have such a right at the appellate level, where "the constitutional concerns are lessened."

To determine whether Part I, Article 15 mandates that counsel be appointed for a defendant who appeals an unsuccessful collateral challenge to a plea-based conviction, we begin by determining whether it requires the appointment of counsel at the trial court level, since if it does not provide such right in the trial court, then there is certainly no such right on appeal. Balancing the *Eldridge* factors, we find that it does not, although for slightly different reasons than in *Hall*.

When we considered the *Eldridge* factors in *Hall*, we found first that the petitioner's liberty interest in a collateral attack was less substantial than his liberty interest at trial or on direct appeal. *Hall*, 154 N.H. at 183. The second factor was also attenuated, because even without counsel, the defendant had materials to assist him in preparing his collateral attack, including the "transcripts, motions and briefs from the trial and direct appeal." *Id.* at 184. Moreover, "the reliability of the defendant's conviction ha[d] been tested through both trial and appellate review." *Id.* Finally, we determined that although appointment of counsel would assist the petitioner and the court, "the automatic appointment of counsel would . . . impose a significant fiscal and administrative burden on the State." *Id.*

The defendants in this case concede that their liberty interests are similar to Hall's, since they are incarcerated upon facially-valid convictions, and concede that the government interests in their cases are similar to those in *Hall*. They argue, however, that the second *Eldridge* factor weighs more heavily in their favor and we should therefore distinguish *Hall* and find a right to counsel in their appeals. Specifically, Rivera argues that because he had no direct appeal, he does not have transcripts, motions or briefs prepared by counsel, and the reliability of his conviction has not been tested through appellate review. Although Lopez

has a transcript of his plea hearing, his claim is otherwise identical to Rivera's.

We agree that the factors which insured the reliability of Hall's conviction are not present for a defendant whose conviction is plea-based, unless the defendant has mounted a direct appeal. However, there are other factors which sufficiently minimize the risk of the erroneous deprivation of liberty when a defendant challenges a plea-based conviction in a collateral attack.

These begin with the requirements of the plea itself. Under *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969), and its progeny, the court must ensure, and the record must demonstrate, that a defendant who pleads guilty does so knowingly, voluntarily and intelligently. *Boykin*, 395 U.S. at 242-44. The court must ensure that the defendant fully understands the elements of the offense to which he is pleading, the direct consequences of the plea, and the rights he is forfeiting, and ensure that the defendant's waiver of rights is voluntary. *Id.*; *see also Henderson v. Morgan*, 426 U.S. 637, 645-46 (1976); *Arsenault*, 153 N.H. at 416; *State v. Allard*, 116 N.H. 240, 242 (1976). Significantly, if in a collateral challenge to a guilty plea a defendant claims that his plea was involuntary or without understanding and produces evidence that presents a genuine issue for adjudication, then the burden shifts to the State to prove by clear and convincing evidence that the plea was voluntary and intelligent unless the record of the plea affirmatively demonstrates a plea colloquy that satisfies *Boykin*'s requirements. *Arsenault*, 153 N.H. at 416. This burden-shifting stands in marked contrast to the burden in an ineffective assistance of counsel claim, which rests entirely upon the defendant, who must show that there is a reasonable probability of a different outcome absent counsel's deficient performance. *State v. Gonzalez*, 143 N.H. 693, 702 (1999). The *Boykin* requirements and the burden-shifting that occurs when the record fails to show that those requirements have been met ensure the plea's reliability and reduce the risk of the erroneous deprivation of liberty. Accordingly, the *Eldridge* factors weigh against finding a right to counsel in a collateral challenge to a guilty plea. Since there is no right to counsel in the first instance, there is no such right on appeal. *Westover*, 140 N.H. at 378.

In *Duval v. Duval*, 114 N.H. 422, 426 (1974), we recognized that in some non-support civil contempt cases "there may be issues of sufficient complexity so as to require the defendant to be assisted by counsel for a competent presentation of their merits," and thus found that trial courts have the discretion to appoint counsel for an indigent defendant in a complicated nonsupport case. In *Hall*, we recognized that some collateral challenges based upon ineffective assistance of counsel may be similarly

complicated, and that both types of proceedings "involve a potential or ongoing restriction of one's liberty." *Hall*, 154 N.H. at 185. Accordingly, we held that in cases where complicating factors exist, the trial court may in its discretion appoint counsel. *Id.* Complicating factors might include: the defendant's capability to speak for himself, the character of the proceeding, the complexity of the issues, and other circumstances which show that the defendant would be treated unfairly if no counsel is appointed. *Id.* There is no reason why the rule should be different when a defendant collaterally challenges a conviction that is based upon a guilty plea, or when he appeals such a challenge. Accordingly, when a defendant appeals a collateral challenge to a plea, we may appoint counsel if complicating factors such as those identified in *Hall* are present.

Both Lopez and Rivera proceeded *pro se* when challenging their guilty pleas in the trial court, and it is unclear from the record whether they requested court-appointed counsel at that level. Although both requested court-appointed counsel on appeal, we did not direct the parties to address the applicability of *Hall* to their particular cases. Accordingly, if either defendant wishes to have counsel appointed on appeal, he may file a motion for the appointment of counsel in this court specifying the complicating factors that indicate counsel should be appointed.

Lopez argues that a procedural error in his case may have led him to pursue a collateral attack rather than a direct appeal and that counsel should therefore be appointed. Specifically, he argues that the trial court and trial counsel incorrectly advised him that he had no right to directly appeal his conviction. When he pled guilty, Lopez signed a standard acknowledgment and waiver of rights form stating that he was giving up, among other things, his right to appeal if convicted. The sentencing court similarly indicated that Lopez was giving up this right. However, simply because a defendant's conviction is based upon a plea rather than a judge or jury verdict, a defendant does not waive his right to appeal. Lopez argues that because the advice he received from counsel and the court was misleading and could have discouraged him from pursuing a direct appeal where he would have been entitled to court-appointed counsel, the incorrect advice, standing alone, entitles him to counsel. We disagree. The record does not contain any evidence that the defendant would have directly appealed his plea had he been correctly advised. Thus, the incorrect advice, standing alone, does not complicate the defendant's challenge to his plea-conviction to the extent that counsel is required. Accordingly, the defendants' requests for the appointment of counsel are

denied, without prejudice to either defendant filing a motion, as indicated above.

*So ordered.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.